## CRAIG et ux. v. BARRET.

### No. 2585.

Court of Civil Appeals of Texas. Eastland.

April 25, 1947.

John T. Nicholson, of Comanche, for appellants.

Robert H. Long, of Comanche, for appellee.

LONG, Justice.

On the 7th day of February, 1946, between two and three o'clock in the morning, a mare belonging to appellants J. L. Craig and wife, Neva Stark Craig, was killed by a truck belonging to appellee, W. B. Barret, and being driven by Elmer Kerley. This suit was brought by appellants against appellee for their damage proximately resulting from the loss of the mare. Judgment was for appellee on the verdict that the accident was an "unavoidable accident"—the only question answered by the jury of the several questions submitted by the court in his charge. From such judgment, appellants have appealed.

Appellants insist that the evidence was insufficient to raise the issue of unavoidable accident.

Elmer Kerley, the driver of the truck, testified as follows:

"On the day previous to the one in question, in the late afternoon, he and his father, W. E. Kerley, took defendant's truck, and loaded it with defendant's cattle, in Comanche. They then drove to Fort Worth, unloaded the cattle, (other people did the actual loading and unloading) and started back to Comanche, Elmer Kerley driving from Crescent on because his father had a sore foot. On the road driving back, the left light of the truck had a tendency to cast its light to the left, so they stopped along the road and placed a wooden wedge alongside the light, to try to straighten its beam. As they came onto the bridge over the Leon River, several miles from Comanche, it was between two and three o'clock in the morning, witness said he was driving he estimated about 30 or 35 miles per hour, and as he got within 30 or 40 yards of the western end of the bridge, he saw a horse about 30 or 40 yards beyond the end of the bridge, running east toward him, that is toward the western end of the bridge. The horse was in all, about 60 to 80 yards away when he first saw it, running on his, the driver's, left, on the approach to the bridge, between the edge of the pavement and the steel guard rail along the approach. He estimated the horse was running about 15 or 20 miles per hour.

"The witness hit his brakes, but had to let up one time and put back on, because the brakes pulled the truck to the right. Horse and truck collided about the time witness put on brakes 2nd time. The truck was a semi-trailer, about 40 feet long, and since he was traveling on the bridge, near the bridge guard rails, he was in danger of running the truck into the bridge guard rails. As the truck reached the end of the bridge, the horse 'crosshayed' out toward the center of the road, and the truck struck the horse, with its front end, or radiator, knocking the horse to the right of the road. The witness got out, found the horse was down, by the side of the road, on the right

side, between the pavement and the guard rail, on the approach to the bridge."

The only other witness to the accident was W. E. Kerley, father of the witness, Elmer Kerley. He testified that the first thing he knew he saw his son grab the brakes and they had hit a horse; that he wasn't particularly looking down the road at the time; that he might have been looking off to the side.

The above testimony is all the testimony offered as to how the accident occurred. It can readily be seen that the jury could find that the driver of the truck was not negligent.

It appears from the testimony of appellant, J. L. Craig, that he kept the mare in a pasture bordering on the highway; that the only entrance to the pasture was by a gate several hundred yards from the bridge. He testified that on the evening the mare was killed, he had her in this pasture and that the gate was closed; that the pasture was enclosed by a hog proof fence; that he inspected the fence on the day after the mare was killed and that there was no break in it anywhere. He further testified that his ranch bordered on the river and that lots of people sometimes drove into his place and went fishing. He supposed some one must have done so on this night and left the gate open as there was no other way for the mare to have gotten out; that a good many people had left the gate open before.

From this evidence, the jury could have found that the mare was on the highway without any fault on the part of appellants. Unavoidable accidents exist when there is evidence that something other than the negligence of one of the parties caused the injuries complained of. Collins v. Smith, 142 Tex. 36, 175 S.W.2d 407; Hicks v. Brown, 136 Tex. 399, 151 S.W.2d 790; Texas & P. Ry. Co. v. Day, Tex.Sup., 197 S.W.2d 332.

In this case, the evidence presented a theory under which the accident could have happened notwithstanding the parties to the transaction may have exercised due care. It appears from the evidence that the collision may have been caused by the mare running onto the pavement in front of the truck in such a way that the driver of the truck could not avoid striking her. We are of the opinion that the evidence raised the issue of unavoidable accident. The jury having answered that the collision between the truck and the mare was the result of unavoidable accident, the trial court was correct in entering a judgment for appellee.

Judgment of trial court is affirmed.